## DELAFIELD *v.* COMMERCIAL TEL. CO.

*(Common Pleas of New York City and County, General Term.* January 18, 1889.)

INJUNCTION—DISMISSAL—REOPENING CAUSE—REFERENCE.

A mandatory preliminary injunction was granted against a telegraph company engaged in supplying market reports to subscribers, ordering it to refrain from neglecting to furnish reports because of alleged improper use of a "ticker," and enjoining it from removing its instruments. The subscriber desiring to remove to a new place of business, a new contract was entered into, materially modifying the terms of subscription, and the injunction was modified to cover the new place of business. The contract having been terminated by plaintiff, the court, on defendant's motion and plaintiff's consent, vacated the injunctions, "without prejudice to plaintiff's rights on the trial, and without deciding that the plaintiff was not originally entitled to the injunction." Defendant, by a supplemental answer, set up the termination of the contract and vacation of the preliminary injunction. On the trial plaintiff admitted the facts alleged in the supplemental answer, and, on defendant's motion, the complaint was dismissed, with costs. *Held,* that defendant was not entitled to have the cause reopened for an order of reference to determine whether plaintiff was originally entitled to the injunction.

Appeal from trial term.

Application by Tallmadge Delafield, Jr., to enjoin the Commercial Telegram Company from violating a contract entered into by it with plaintiff, to furnish plaintiff, who thereby became a subscriber to the company, market quotations, etc., and to restrain the removal of certain reporting instruments known as a "ticker." The contract, which was entered into January 27, 1885, for the term of one year, provided as follows:

"The said company will furnish to its subscribers, by means of its reporting instruments or otherwise, at their respective offices, as correct market quotations and commercial news reports as it can obtain by the employment of experienced reporters and operators; but in view of the difficulties inherent in the business the company will not be pecuniarily responsible for the accuracy of such quotations and reports, nor for errors, delays, or omissions in the service. The reporting instruments are placed in subscribers' offices solely for the convenience of the company in delivering said quotations and reports simultaneously to its subscribers. They are not leased to subscribers, but are the exclusive property of the company, and are kept in order and operated solely by the company, at its own expense; subscribers being entitled only to the quotations and reports furnished by the company on the tape from said reporting instruments or otherwise. These quotations and reports are furnished to subscribers for their private use, in their own business, at the office in which the reporting instruments are placed, exclusively. It is expressly required and

stipulated that such subscribers shall neither give away nor sell the quotations and reports, or copies of the same, whether in whole or in part, to others; nor cause or suffer the same to be used or copied for use or publication at or to be transmitted to any point other than said office. The subscription by one party for the benefit of himself and others at their joint expense will not be received. The quotations and reports furnished as above are not to be used in the carrying on of any private or public exchange, bucket-shop, or pool-room, or in any public room, office, or other place where the same are or may be used to regulate speculative or other sales, at any public gathering. In case of a breach of the above conditions, or any or either of them, by the subscriber, or upon non-payment of any sum due from the subscriber, the company shall be at liberty to declare this contract at an end, and shall have a right thereupon to discontinue furnishing said quotations and reports, and to remove its reporting instruments and wires from the subscriber's office, without further notice; and for this purpose, and for inspection, the company's servants shall have free access thereto at all reasonable hours."

The complaint, after alleging a legal obligation on the part of defendant to serve all the public desiring its services, without discrimination, alleged "that the period for which said contract was by its terms to continue has not expired, and the plaintiff has fully kept and performed all the conditions of said contract to be kept and performed by him, and has not violated the same or any of them, and is ready and willing to continue fully to keep and perform the same; but the defendant, in violation of said contract, and of its legal duty to the plaintiff in the premises, though still furnishing such New York Stock Exchange quotations and reports to its other subscribers as heretofore, has wholly ceased, neglected, and refused, and still willfully neglects and refuses, to furnish to the plaintiffs the quotations and reports contemplated by said contract, or any New York Stock Exchange quotations or reports whatever, by means of or on the tape from said reporting instrument or indicator or otherwise; but, on the contrary, as plaintiff is informed by W. A. Dunn, the general manager of the defendant, the defendant, on or about the 16th day of March, 1885, without cause or excuse, willfully disconnected said reporting instrument so placed in plaintiff's said office from its telegraphic circuit, and disarranged the working of the same, and detached the same from its said wires over which such quotations and reports had theretofore been telegraphed to it, and otherwise maliciously and willfully so interfered with said instrument or indicator that it became and was, and still remains, wholly useless and worthless to the plaintiff; and by reason of the defendant's said wrongful acts in so disconnecting, disarranging, detaching, and otherwise improperly interfering with said reporting instrument or indicator in violation of its said contract and of its legal duty to the plaintiff imposed upon the defendant both by its said contract and by law, in and by virtue of the exercise as aforesaid of its franchise as a telegraph company, the plaintiff, since March 16, 1885, has not received, and has been and is now unable to obtain, from the defendant any New York Stock Exchange quotations or reports whatever; and the defendant threatens and declares that it will continue the said violation of its said contract, and the disconnecting, disarranging, detaching, and otherwise improperly interfering with said instrument heretofore willfully accomplished by it, and will continue to refuse to furnish to the plaintiff the quotations and reports contemplated by the said contract and furnished to its other subscribers, or any New York Stock Exchange quotations or reports whatever, whereby the plaintiff has suffered, and is daily suffering, and will continue to suffer, great and irretrievable loss and injury in his said business,"—and prayed for an injunction and damages, whereupon the court (ALLEN, J.) granted, on March 23, 1885, the following order of injunction: "It satisfactorily appearing to the court from the verified complaint in this action, and from the affidavits of Tallmadge Delafield, and Tallmadge Delafield, Jr., each verified herein March

21, 1885, that sufficient grounds for an injunction exist on the ground that the plaintiff demands and is entitled to judgment against the defendant, restraining the commission or continuance of acts the commission or continuance of which during the pendency of the action would produce injury to the plaintiffs, and that the plaintiff is suffering and is about to suffer from said acts great and irreparable loss and injury in his business, and the plaintiff having given the proper undertaking, it is hereby ordered that the defendant, the Commercial Telegram Company, its officers, agents, servants, employes, and representatives, refrain from neglecting or refusing to furnish to the plaintiff, Tallmadge Delafield, Jr., regularly at his office at No. 52 Broad street, in the city of New York, the same New York Stock Exchange quotations and reports which said defendant furnishes or shall furnish to its other customers and subscribers in the city of New York, and in the same manner as the same shall be furnished by it to its other subscribers and customers; and from further disconnecting, disarranging, or detaching from its regular telegraph lines, or otherwise improperly interfering with the telegraphic reporting instrument or indicator heretofore, on or about January 28, 1885, placed by said defendant in the said office of the plaintiff at No. 52 Broad street, in the city of New York, and from continuing or permitting the continuance of the disconnection, disarrangement, or detaching of, or other improper interference with, the said reporting instrument or indicator heretofore accomplished by the defendant, and from doing or permitting to be done any other act or thing whereby the plaintiff Tallmadge Delafield, Jr., shall or may fail to receive at his said office from the defendant, regularly, the same New York Stock Exchange quotations and reports which are or shall be furnished by the defendant to its other customers and subscribers, and in the same manner as the same are or shall be received by such other customers and subscribers, until the further order of this court in the premises; and in case of disobedience to this order the defendant and each and every of its officers, agents, servants, employes, and representatives disobeying the same will be liable to the punishment therefor prescribed by law.   Due cause appearing therefor from said complaint and affidavits and the affidavit of Eugene Frayer, verified herein March 21, 1885, let the defendant show cause at a special term of this court, to be held at chambers at the court-house in the city of New York on the 30th day of March, 1885, at 11 o'clock A. M., or as soon thereafter as counsel can be heard, why the foregoing injunction should not be continued in force until the final hearing and determination of this action.   Service of a copy of this order and of said affidavits and complaint on the defendant on or before March 25, 1885, shall be sufficient notice."   This motion to continue the injunction was adjourned from time to time, at defendant's request, and finally adjourned indefinitely, to be brought up by either party on eight days' notice.   It was never brought up, and never argued.

Defendant, in its answer, denied its obligation to furnish quotations to any persons except those complying with its regulations, and alleged that plaintiff had been carrying on his business in connection with a "bucket-shop," in violation of the conditions of his contract, and in violation of the agreement between defendant and the stock exchange, by which it was enabled to furnish the quotations.   In May, 1886, plaintiff moved his office to a new place, and a new contract was entered into, materially modifying the terms of the old contract, and giving defendant the right to remove its instrument at any time "whenever the company, in its judgment, shall deem the business carried on by the subscriber at his office detrimental to its interests, or whenever the company, in its judgment, may deem it for its interest to remove the instruments;" and the injunction was modified so as to cover the new place of business. Plaintiff thereafter terminated the contract on July 31, 1886, by giving the 30-days notice provided for in the contract itself.   Thereafter, on September 1, 1886, the court, on defendant's motion and plaintiff's consent, vacated the

injunctions "without prejudice to the plaintiff's rights upon the trial, and without deciding that the plaintiff was not originally entitled to the injunction." The defendant then obtained leave and set up by supplemental answer the termination of the contract and the vacation of the preliminary injunctions. The plaintiff, both before and after service of the supplemental answer, offered to discontinue without costs, but was not permitted to do so; defendant claiming the right to bring the suit to trial for the purpose of obtaining a decision that the plaintiff was not originally entitled to the preliminary injunction, so that he might recover from the surety on the injunction undertaking (bond) his damages. Defendant brought the action to trial on April 18, 1888. The plaintiff, in opening, admitted the facts set up in the supplemental answer. The court thereupon, on defendant's motion, dismissed the complaint, with costs. The plaintiff asked the court to provide in its decree that the dismissal (on facts occurring after the action was commenced) was not a decision that the plaintiff was not originally entitled to his preliminary injunction, also that it was without prejudice to the right of the plaintiff, at the proper time and place, wherever that might be, to insist that he was originally entitled to his injunction. The defendant, on this motion, and subsequently in written requests to find, asked the court to find that the plaintiff was not originally entitled to his preliminary injunction. No testimony had been given, and the court declined to make any finding whatever, saying that it must keep to the issue raised by the motion to dismiss, and simply dismissed the complaint, with costs to the defendant on the supplemental answer, as admitted. The decree was settled on notice, after hearing both sides, and was signed and filed in the clerk's office, May 16, 1888. On the first Monday of June, following, (17 days after entry of the decree,) defendant moved before the trial judge "that the case be reopened for further proof upon, or a reference ordered to hear and determine, the question whether the plaintiff was originally entitled to the injunction obtained by him at the commencement of the action;" alleging that there had not yet been any decision of that question, and that consequently he could not proceed against the surety on the injunction undertaking. June 12, 1888, this motion to reopen the case, or for a reference, was in all things denied, and defendant appeals from the order denying his motion.

Argued before LARREMORE, C. J., and ALLEN and BOOKSTAVER, JJ.

*James E. Chandler,* for appellant. *Warner & Frayer,* for respondent.

PER CURIAM, (*orally.*) In this case we do not think that the judge who made the order improperly exercised his discretion, and it is our opinion that the order must be affirmed. The complaint was dismissed upon the facts set up by the supplemental answer, which facts occurred subsequently to the granting of the injunction. There was no evidence before the court at that time whether or not the original injunction order was properly obtained. The judge therefore was justified in refusing to find upon that question; but, even if he were not, defendant's remedy was by an appeal from that judgment. While every court of record has the power to relieve against an oversight, and to correct an error arising through inadvertence, the application in this case was not founded on these grounds, and, if it had been, was properly denied, for the papers show that the question was raised on the trial, and not overlooked.